EDWARD YANISH and Another v. J. NEILS LUMBER COMPANY. [1]

May 10, 1907.

Nos. 15,238—(108).

**Contract—Deposit with United States.**
Plaintiffs had deposited with the treasury department of the United States a sum of money as security for the performance of a contract given them for cutting certain standing pine timber upon government land. They assigned the contract to defendant, in consideration of which defendant agreed to repay them the amount of such deposit whenever the government should permit the same to be applied in payment for timber cut under the contract. The proper department of the government adopted a rule that money so deposited might be applied annually, in proportion to the amount of timber cut upon procuring the consent of the contractor's surety.

*Held:* (1) That the contract, properly construed, imposed upon defendant the obligation of repayment to plaintiffs so soon as the deposit could, by rule of the government, be resorted to in whole or in part for the purpose stated; and (2) that it was defendant's duty to obtain the consent of the surety to such application.

Action in the district court for Ramsey county to recover $7,913.49 upon an assignment contract. The case was tried before Kelly, J.,

[1] Reported in 111 N. W. 921.

who found in favor of plaintiffs. From a judgment entered pursuant to the findings, defendant appealed. Affirmed.

*A. Y. Merrill* and *R. J. Powell*, for appellant.

*Walter L. Chapin*, for respondents.

BROWN, J.

The facts in this case are as follows: Some time prior to October 24, 1904, plaintiffs entered into a contract with the United States under which they acquired the right to cut and remove ninety five per cent. of the pine timber standing upon land owned by the government upon certain specified terms and conditions. As a part of the transaction they were required to and did deposit with the treasury department of the United States the sum of $7,913.49 as security for the faithful performance of the contract. As further security for such performance plaintiffs executed and delivered to the government a bond in the sum of $20,000, with the Title Guaranty & Trust Company, of Scranton, Pennsylvania, as surety. Thereafter, and on the date above mentioned, plaintiffs sold, assigned, and transferred all rights acquired and possessed by them under the contract to the defendant, who agreed to carry out and perform the same, and to assume all obligations therein created and imposed. In consideration of the assignment defendant agreed to repay to plaintiffs the amount so deposited by them with the United States as soon (1) as plaintiffs should procure from the government an approval of the assignment, or (2) as soon as the government, through the proper department, should rule that the sum so deposited was applicable to the purchase price of the timber cut under the contract. Until available for that purpose, defendant agreed to pay interest thereon at the rate of six per cent. per annum. As a part of this assignment contract defendant agreed to and did execute and deliver to plaintiffs a bond in the sum of $20,000 for the purpose of indemnifying them from loss for any failure on its part to perform the government contract, and the further purpose of protecting plaintiffs' surety, the Title Guaranty & Trust Company, from similar loss. The approval of the assignment to the defendant was never obtained from the government, but on March 11, 1904, the interior department adopted a rule in reference to contracts of this character in part as follows: That upon a person securing in writing, under

seal, the consent of the surety thereto, credit will be allowed on final settlement each season for such proportion of the amount deposited by purchasers with their bids, as the amount of the timber logged each season, bears to the amount estimated to be on the land covered by the bid.

Plaintiffs brought this action to recover the amount deposited by them with the government, and which defendant agreed to repay them as the consideration of the assignment, on the theory and contention that this rule rendered the deposit applicable to the purchase price of timber cut under the contract, and that the whole amount thereof was therefore due and payable by defendant. The trial court found the facts substantially as here outlined, and ordered judgment for plaintiffs, from which defendant appealed.

1. The principal assignments of error present the question whether the findings are sustained by the evidence, and whether they are sustained depends upon the construction to be given the contract of assignment to defendant and the rule of the interior department above referred to.

By the assignment defendant agreed to repay plaintiffs the amount of the deposit whenever (so far as here material) the government should adopt a rule rendering the same applicable to the payment of the timber logged under the contract. It is contended that the proper construction of the agreement imposed upon defendant the obligation to repay plaintiffs the amount of the deposit when, and only when, the whole thereof might be applied for the purposes stated. We do not concur in this view of the matter. It clearly was not the intention of the parties that plaintiffs should furnish defendant with funds to carry out this contract; that the consideration for the assignment of the contract should only be paid in proportion as the deposit was available in discharge of the amounts due the government. On the contrary, it is fairly clear that what the parties intended was that so soon as defendant could, by rule of the government, resort to the deposit to discharge, in whole or in part, the pecuniary obligations arising under the contract, then the whole amount should become due and payable to plaintiffs. This is made clear by the first provision of the agreement relative to the repayment of the deposit, by which defendant agreed to pay as soon as the government should approve the transfer

to defendant. It is not probable that the parties intended to fix different times of payment. And as the whole amount became due upon approval of the assignment, it requires no strain to say that it also became due and payable so soon as it might be resorted to annually, in proportion to the quantity of timber cut, in discharge of the government's claim. And we hold that the contract should be so construed.

2. It is also contended that the terms of the rule providing for an application of the deposit were not complied with, in that the consent of plaintiffs' surety was never obtained as provided for by the rule. There is no particular force to this contention. At the time of the assignment to defendant a bond was given by it to plaintiffs which wholly eliminated, as between these parties, plaintiffs' surety from further consideration. The bond given by defendant was conditioned, not only to save plaintiffs harmless for a failure to perform the contract, but also to protect plaintiffs' surety. Defendant thus became substituted respecting all the obligations of both plaintiffs and their surety, and if the duty to obtain the consent of the latter to an application of the deposit rested upon any one, it was upon defendant. The day of payment to plaintiffs came on the production of the rule permitting resort to the deposit, and defendant, having assumed all obligations of the plaintiffs in the premises, should not be permitted to delay payment for its failure to obtain this consent.

Judgment affirmed.